This is time set for the argument in the United States v. Rodriguez. You may proceed. Before I begin, I hate to do this to the Court, but I am extraordinarily hard of hearing. I've got the device that is theoretically going to work. I'm not sure it is. If I could ask the Court respectfully to really lean into the microphone, I would greatly appreciate it. We'll do that. Thank you. I'm a little bit hard of hearing also, and I would appreciate it if you speak up directly in the microphone. I will try to do that, Your Honor. And I'm on my way, so. Yeah, I know. Getting old ain't for sissies. My name is Michael Bigelow, and I represent Mr. Rodriguez, who is the movement and the appellant in this matter. And the first thing – oh, and by the way, my phone is on because I kind of need it for this. If it starts ringing, I'll try to figure out something to do with it, but I don't think it will. First thing about waiver, the waiver provision doesn't – I really don't know where to start on all of this, to be honest with you. But the waiver in this case, as to the first claim, really doesn't apply. The Sixth Amendment – we get to the Sixth Amendment argument. We also get to the Sixth Amendment argument with respect to the second claim, the motion to withdraw. The appeal – I mean, the plea itself came about because of ineffective assistance of counsel under just about any standard. And I think that the court – the district court set out the reasons for it. Something I don't quite understand is why those – that same reasoning doesn't apply to the second claim. But she did. We'll get to that, theoretically. Since the plea agreement came about as a product of ineffective assistance of counsel, then the waiver is tainted. And because the plea came about because of ineffective assistance of counsel, the motion to withdraw the plea, which is the second claim, is also tainted, particularly since it relates back to the plea agreement. And in addition, there are a couple of cases out of district – out-of-circuit cases. Henderson, DeRue, another case, Attar, all reach the conclusion that if the motion to withdraw incorporates a colorable claim, that the plea agreement itself, the waiver of appeal rights that it contains, is tainted by constitutional error. And so I just don't think that waiver is an issue in this case. With respect to jurisdiction as to the uncertified claim, at least claim two – Pardon me. Can I interrupt you for just a second? I didn't quite get the point that you're trying to make as to why waiver doesn't apply to the third claim, which is based on a failure to investigate and does not posit voluntariness or lack thereof. The point with respect to the third claim – and, Your Honor, I will agree with you that it is not particularly well pled, which is not my fault, but it's not particularly well argued, which is my fault. But the point is that the failure to investigate goes as much as anything to why the motion to withdraw the plea would have prevailed. The trial lawyer had no idea what Padilla was all about. He had no idea what the criminal case was about. And so he leads – he's not paying any attention to the immigration counsel who says, look, there's a fair and just reason to withdraw this plea. You can withdraw the plea for a fair and just reason. Well, he's not going to raise that issue because it means that he is an idiot. He's incompetent, at least. Maybe not an idiot. But he's incompetent because he's the one who led the client, his client, down the primrose path to accept the plea in the first place. And he had to get really creative to do it. He had to promise him. He had to promise him, hey, look, you know, if removal proceedings begin, I can help you. And, yeah, you can – after this is all over, you can move to withdraw the plea. Well, yeah, he can move to withdraw the plea when it's all over, but he had no idea, or at least he misled the client into believing that after sentencing he could withdraw the plea. And it would be a really simple thing to do. And, oh, yeah, by the way, I'll help you. Which, by the way, is probably, at least in my mind, the best evidence in this case. Maybe not the best evidence, but certainly good evidence that he, the client, really was focusing on deportation. I set out all the reasons in my brief, but trial counsel had to get creative. District court judges, judges who have practiced in state courts, see this, unfortunately, all the time. When I was in state court, I saw it a lot. Didn't see it so much in federal court. But that is where a client, the defendant, or rather trial counsel, runs out of money, doesn't want to do it. He says, I don't want to go back and do this thing anyway. I mean, that statement is, I don't want to go back and do this. That's one of the reasons I don't want you to make the motion to withdraw. But trial counsel runs out of money, gets bored with the case, and so he gets creative on why the plea should be taken. And that's what this guy did, which is, it's incompetent or ineffective, but it's also very annoying. But it's right there. That's one thing. Anyway, I don't think I quite answered the court's question. You didn't. But that's all right. May I ask the court to restate the question? My question is, a third claim, as I understand it, is ineffective assistance of counsel because he didn't investigate the possibility of pleading a misdemeanor rather than a felony guilty. And I wanted to know why that is not covered by the waiver in the plea agreement. Because it is, it comes about as an explanation, one explanation, one explanation. I've given you the others. One explanation, why he did not want his client to pursue the withdrawal motion. If he had understood that he could actually renegotiate for a misdemeanor, if the motion to withdraw had been granted, if he'd understood that, he would have promoted the withdrawal motion. And he didn't promote the withdrawal motion. Now, the reasons I think he didn't withdraw are what I've just said. He would have had to admit that he didn't know what he was doing. And he didn't really know what he was doing. So his failure to investigate folds into Claim 2. It also folds into Claim 1, his failure to investigate the idea of a misprisoned felony. When they had, when they were on equal footing, they were on equal footing before the plea. If the plea had been withdrawn, they would have again been on equal footing. I know that Mr. Hitt, I've known Mr. Hitt for a long time. And I know Mr. Hitt is going to stand up here and say, look, I'm here. Ask me. Would I have given him a misprisoned felony? And he's going to tell you no. Wouldn't have given you, wouldn't have given me. But your client was facing a 10-year minimum sentence. Is there any evidence at all that the prosecution would have allowed a plea to a misdemeanor? If the plea to withdraw had been granted, they would have been on equal footing. Even Mr. Hitt, and I don't mean this pejoratively, too pejoratively, even Mr. Hitt would have recognized at that point in time, at that point in time, Judge Mueller was not thinking about a 10-year mandatory minimum. Judge Mueller was thinking about something considerably less than a mandatory minimum. So we withdraw the plea, and now trial counsel has got some leverage. I mean, in his brief, in his answering brief, he even says, Mr. Hitt says, or the government says, that trial counsel didn't have leverage, so there's no chance he would have gotten a lesser offense. Well, before the plea, he had no idea that he could even ask for a misprisoned felony. And I think that that's pretty apparent when you go through the rest of it. But after, if the plea gets withdrawn, he does have a better opportunity. He's got some leverage because he, Mr. Hitt, the government, knows where it's going. And the court asked about a 10-year mandatory minimum. Well, I mean, if you're facing a 10-year mandatory minimum, it's not a bad deal. And your view is that was never on the table, but he was charged with it. I'm sorry, Your Honor, I'm not sure I'm following your question. I can hear you, but I'm not sure I'm following your question. Well, I'm just saying, it wasn't, the plea deal was not a bad deal. The plea deal was a nonexistent deal. Okay, well, let me get back to then the voluntariness of it. In the plea agreement, it clearly states that your client is likely removable. And at the plea colloquy, Judge Mueller gave your client and his attorney some time to talk about it. And they said, do you understand the consequences? And he said, yes. How are we supposed to deal with that? Well, I think you ignore it. How can we ignore that? Because it doesn't matter. What Judge Mueller said is irrelevant. She agrees it's irrelevant. Lee v. United States, United States v. Lee, the case, anyway, says you don't worry. No, Lee doesn't say that. There's another case in there that says what matters is the conversation that trial counsel had with his client. And what the court says doesn't make any difference. You know, that flies in the face of the colloquy, because that means that any plea could be withdrawn at any time because the client says, well, I didn't get advice of that and I wouldn't have done it. I mean, here, if it was a case of nondisclosure entirely, that would be different. But here you have it right in the plea agreement, and there's a colloquy that says, yeah, it's voluntary. Well, if it were nondisclosure, it would be a different issue. But here it's not only is he was in the defendant was induced to plead guilty. Look, removal is not a problem. That's what matters. Don't worry about it. I can take care of it. He said it was doable. Yeah, and, you know, that was incorrect. It was more than incorrect. Right, but he was informed in the plea agreement that he was likely removable. Who was he supposed to take advice from? Well, it goes to voluntariness. That's a stretch I don't think that I have ever actually seen in any case. The cases, and I don't have it. I mean, I do have it, and I cite to it. But what comes from the bench is irrelevant. I think that would be a surprise to many of the district judges. I'm sorry? I think your statement would be surprising to many of our district judges. Yeah, I know that because they don't like the idea that nobody listens to them. But, you know, just like Lee says, you can't put too much emphasis on a theoretical trial and a theoretical sentence that might or might not ever occur. What you've got to pay attention to is the rest of it. Counsel, Judge Gould, if I could interject one question for you. If a plea is fully voluntary, but it is not fully knowing and intelligent because things haven't been disclosed to the pleader, can that plea be withdrawn? Oh. Did you understand my question? Would you say the first part of it again, please? If a plea is voluntary but not intelligent, can it be withdrawn? I think the two – I think they're the same thing. I don't think they can be divided. And I think I would – sorry, Your Honor, I apologize. I'll get to the microphone. I don't – if you make that determination, if someone were to make that determination, yes, I would say that the plea could be withdrawn. The plea could be withdrawn for a fair and just reason. I didn't understand the plea. It wasn't intelligent. But I think that the standard is required – I'm not sure the standard requires both. I've never seen that done. So the short answer is, yeah, I think the plea can be withdrawn. But whether it can be withdrawn or not, I really don't have a clue because I've never looked at it. Thank you, Counsel. We'll give you a couple minutes for rebuttal. I appreciate it. Thank you. Good morning, Your Honors. May it please the Court, my name is Jason Hitt. I'm an Assistant United States Attorney in the Eastern District of California. And I just want to briefly address some of the questions the Court had for Mr. Bigelow and some of the statements. First, I think it's important to recognize on the waiver issue, there is an important distinction between, Your Honors, that is Judge Thomas' question about voluntariness in assessing waiver and conflating that with assessing ineffectiveness under Strickland. And so, for example, in Rodriguez's argument, he argues that Lee does not permit this Court to evaluate what Your Honor mentioned, which is language in the plea agreement, district court colloquy at Rule 11, contemporaneous evidence of council's statements with defendant present. All of those can and should be considered for the issue of waiver and knowing and intelligent and voluntary. And I think that's appropriate. I think the record is very strong in demonstrating that, at a minimum, the defendant had ample notice in terms of voluntariness on the immigration consequences. When we turn to the ineffectiveness prong, that Lee does circumscribe some of the evidence or at least reduces the weight that the Court should give to matters about what's in the plea agreement and what the Court said. However, even on that prong, the district court got it right because if we take Lee at its face, less contemporaneous evidence, that is post hoc justifications, are given less weight. And here, the declaration that the Court even considered, the government argues really isn't that reliable, the doable but difficult comment, that comes from a declaration filed two years after sentencing. That is not a contemporaneous evidence piece that would be more reliable under Lee. More importantly, the district court considered that difficult but doable and assessed that that fact, subject to clear error, did not demonstrate on the Strickland prong ineffectiveness or prejudice. Mr. Hitt, may I interrupt you for a second? Doesn't the statute require that the district court judge in their 2255 petition such as this conduct an evidentiary hearing unless the proof against the defendant and movement is conclusive? Your Honor, it does. And I think in this case, the record did conclusively determine or demonstrate under even the best scenario, accepting facts that Mr. Rodriguez had presented in the declarations, that prejudice could just not be proven under any version of Strickland. And in one of the cases cited by Mr. Bigelow in his reply brief, that is Kumar v. U.S., this Court said that proof of prejudice in this narrow setting required what's called, quote, either that the defendant had gone to trial or received a better plea bargain and in the same opinion later describes a better immigration neutral deal. The district court had no evidence and there's no evidence in the record that prejudice would ever be shown on that standard because as the Court alluded to during early argument, the government would not have provided any offer in such a serious methamphetamine case. In fact, the record conclusively demonstrates because I was asked by the district court about that. And at ER excerpts of records 79 through 80, I make a comment in response to this idea of would there be some other offer. And I said in my experience there's no way or very unlikely that our office would ever offer that in a methamphetamine case. But Lee tells us very clearly that the question is not whether the movement could prove prejudice had he gone to trial. The prejudice is proven by his lack of opportunity to go to trial. Justice Thomas's dissent takes the position you're taking now, which is no, you've got to prove that had he gone to trial, he would have had a reasonably probable better result. But that's a dissent. The majority of six in that case in Lee said that the opportunity to go to trial, even if it's a Hail Mary, is a violation of the defendant's rights. How do you get around that? Because at the guilty plea, Your Honor, under Lee, and as you've characterized the case, Mr. Rodriguez was specifically provided the opportunity to not move forward when he was told there is a risk you're going to be removed from the United States. He was given time. He was told that by the plea agreement and he was told that by the judge, but that's not what he claims to have been told by his attorney, that an element of deportation was doable. So we have a conflict between what he says he was told by the attorney and what he was told by the plea agreement and by the judge. So doesn't that suffice to make the issue not conclusive? I don't think so because where you're getting the doable evidence is not contemporaneous. What is contemporaneous is in the district court with counsel present, and his quote is something to the effect of he understands he has the risk of being removed from the United States. So can you cite me a case which says that if the evidence which conflicts with his knowledge that he might be deported is not contemporaneous, that is sufficient for the district court to conclude that the evidence is not conclusive and need not give an evidentiary hearing. On the question of evidentiary hearing, I don't have a case that is exactly what the court described, but in this case, the district court did consider the difficult but doable and found it didn't meet the prejudice standard. And even if there were – and so in other words, it wasn't discarded. The government's view is it's not reliable. It's post hoc sort of characterizations of, you know, sort of a self-serving declaration after the sentence and supervised release is complete. Well, that's something that the judge would consider at an evidentiary hearing, but absent an evidentiary hearing, we don't have that decision by the district court judge, do we? Well, you have the court giving it weight that we don't think it's entitled to, but even if it gave it the weight, it still can't show prejudice because the cases the court's describing where there is a conflict, most of the cases involve one of two things that are not present here. First, affirmative misrepresentations. You will not be removed or deported. Or second, what Judge Thomas alluded to, which is a sort of nondisclosure where nothing is said, there's an absence in the record, and coupling that with district court not inquiring on Rule 11 colloquy. Those are the two fact patterns where prejudice can at least be entertained, but in all of the cases where prejudice has been found, there are outlier cases where there is something very specific and contemporaneous that the defendant is usually charged with an immigration-related offense, has made some specific comment or rejected a plea, as in Rodriguez-Vega, because of a specific immigration condition. There was no such evidence here for Rodriguez, and there was no offer that was an alternative. So I don't think you can even get into a contested situation in the sense that the court accepted it and said you can't prove prejudice under Strickland and under the case law, you don't go any further. And I guess I'm prepared to submit unless the court has specific questions for me. Well, one, I gather we don't have any affidavit or evidence at all from defense counsel. Is that right? That's right. And the two declarations prepared by Mr. Rodriguez two years after the fact, those were both prepared with the assistance of counsel. The first was in August or December, and then there was a subsequent one, I'm sorry, December 27, 2017 and April 3, 2017. There was no declaration or facts pointed to. Everything was post hoc after the fact. And what's Mr. Rodriguez's status now? He's completed his supervised release term, his sentence, and my understanding of this court's precedent is the only reason there's jurisdiction to hear it is because of the potential immigration consequence. Otherwise, there is no more incarceration or supervision. And let me repeat Judge Gould's question, which is— I don't know that, Your Honor. I think he made bond, but I'm not sure. There's nothing in the record. I would defer if Mr. Bigelow has any specific facts, but I can't answer that. And to repeat Judge Gould's question, can you have a voluntary plea that's not knowing and intelligent? And if so, what are the consequences? It's a really interesting question. My reading of Davies, which examines something very similar in terms of knowing, intelligent, and voluntary, the way the court stated the standard is it does seem that knowing and intelligent is required in addition to voluntary. And the language that I'm looking at from Davies 856 F. 3rd 1246, the first prong in assessing a waiver is the language of the waiver encompasses his right to appeal and the grounds raised, and second, the waiver is knowing and voluntarily made. And so because it's written in that way, I think it is required to be both. Good. Any further questions from the panel? Not here. Thank you. All right. Thank you, counsel. We'll give you two minutes for rebuttal. I don't think I'll take that, but thank you very much. I appreciate it. The United States versus Rodriguez-Vegas 9th Circuit 2015, which is actually cited by the district court, warnings during a plea colloquy are simply irrelevant to the question whether counsel's performance fell below an objective reasonableness. That's in her order, I guess, and it's at ER 11. The court asked about the mandatory minimum, and this was a good deal because it permitted him to go below the mandatory minimum. Your Honor, I beat this to death because nothing in the agreement permitted. There is no obligation on the government's part to get that permits him to go below the mandatory minimum. He got below the mandatory minimum because he qualified for safety valve. The government's got nothing to do with safety valve. They can object to safety valve, but once the judge decides safety valve is okay, she can then go below the mandatory minimum. They didn't agree to a 5K-1. They said you might get it, but that's not an agreement to it. 5K will get you below mandatory minimum too, but when he walked out of the courtroom and down the courtroom steps, he was looking at a lot of time. Nothing they did got him down to a year and a day, and that's it. The court wants to know his status. He's at home with his family and his kids, and he's working. Okay. He's not detained? I'm sorry? He is not detained? No, no, no. Okay. He's being a good citizen. Thank you, counsel. Thank you both. Well, thank you both for coming here today. We appreciate your arguments, and the case just argued will be submitted for decision and will be in recess. All rise.
judges: THOMAS, GOULD, BEA